Case number 13-1312 et al. State of North Carolina Petitioner v. Environmental Protection Agency. Ms. Menard for the petitioner, Ms. Dona for the respondent, and Mr. Johnson for environmental intervenors. Thank you. Thank you. Thank you. Thank you. Thank you. May it please the Court, I'd like to reserve five minutes for rebuttal. When this Court speaks, agencies must listen. North Carolina has listened to this Court's holding in the NRDC v. EPA decision and faces denial of its state implementation plan for having submitted a 1975 major source baseline date as a part of that plan in accordance with this Court's NRDC decision. So the obvious question, which you know is coming, is why not act within 60 days of that decision? Yes, Your Honor, this is an unusual set of circumstances presented by this case. This was, as we know, a legal claim, and from the dicta in the Art Bill 1 decision, such claims are best presented to this Court and not to the agency. However, the matter was initially unripe, and as soon as it became ripe, North Carolina brought it to the attention of this Court. When did it become ripe? North Carolina believes that when EPA responded to its comment in the context of the Utah SIP approval, that EPA provided a position. Are there any authority for that argument? Any other instances where that has triggered a claim? Do you mean a statement in the context of a state implementation plan approval? Right, right, yeah. Another state SIP. No, Your Honor, there don't appear to be that I'm aware of. Yeah, yeah. The general case law is different. In fact, isn't the argument you're making now the same argument that was made by at least 10 other parties in the comment period for the 2010 rule? It's not a new argument, right? Your Honor, there were several comments that used the underlying merits of the state's current argument. However, none of those comments had the force of this Court's decision behind them. There are many interpretations of the Clean Air Act. As we all know, this Court is the one that makes the decision between which ones are just opinion and which ones are actually law. So once this Court spoke, it became clear that the EPA was now, their rule was now contrary to the Clean Air Act. Well, doesn't that run you into a problem then with the 60-day limit? Did you file within 60 days of us speaking? Well, Your Honor, this was, again, going back to the ripeness issue. At that point, North Carolina had no indication that EPA was not going to fully comply with this Court's case law. And if I may use an example to somewhat explain the predicament that we found ourselves in, in June of 2013, EPA issued a letter that we cited in the opening brief on page 12  And in retrospect, it would have been best to include that in the joint appendix, for which I apologize. But on page 2 of that letter, EPA notes at the top of that page that it plans to apply the logic of the NRDC decision not only to the 1997 National Ambient Air Quality Standards, or NAAQS, implementation program that that case specifically addressed, but to the 2006 NAAQS implementation program. Because, as EPA put it, the same logic would necessarily apply. So we have EPA here knowing that the decision applies outside of its express bounds, but understanding that if the logic of that decision applies to other rulemaking, and in this case, a guidance document as well, then that is a logical application of that case that they should undertake to apply. If North Carolina had come before this Court within 60 days of NRDC and had asked that EPA be required to apply the NRDC decision to the 2006 NAAQS implementation rules, I imagine that that would have seemed premature. That obviously, at some point, EPA recognized what seems rather obvious, that that same decision should apply to both the 1997 NAAQS implementation program and the 2006 NAAQS implementation program. So in a similar manner, unless we know that EPA is planning to ignore some manner of complying with the full implications of this Court's decisions, we are really not in a position to have a right claim to say that there is anything worth bringing to this Court. Of course, the NRDC didn't involve the increment rule right here, a different part of the statute that was being interpreted. So to state the obvious, it would have been a lot safer for you all to have, if you thought that NRDC changed the legal terrain for the increment rule, you filed then, but you waited on a theory that somehow the EPA might act in a way that it didn't. At the very least, it's an awfully risky litigation strategy. I understand, Your Honor. However, we do not believe that it is fatal to the case, because EPA itself has recognized in the preamble to the increment rule, the final increment rule, that the increment rule is a supplement to the other two PM 2.5 implementation rules that were under direct consideration in the NRDC case. So EPA itself understands that these three rules are intertwined in such a way that it should be a logical application of this Court's case law, the NRDC case in particular, to apply the same holding to that rule. In fact, if all three of those rules are premised on an incorrect assumption that PM 2.5 can be treated as a new pollutant and that PM 10-specific discretion-limiting provisions can be ignored, then all three rules should be revised. EPA also ignored the fact that there was a discretion-limiting provision in the PM 10-specific provision applicable here, because that provision required that the statutory increment be substituted for an equally stringent increment under the PM 10-specific provision. So that is why the logic of the NRDC decision applies here. And EPA has recognized that in order to comply with that language, a 1975 major source baseline date is required. EPA and interveners have argued that the NRDC decision does not apply to this particular rule because it deals with the prevention of significant deterioration program, and the NRDC decision did not directly address that. However, in addition to the reasons that I just mentioned, the definition section that was directly addressed in the NRDC decision applies throughout the Clean Air Act, Section 302, that defines PM 10. In the after-arising grounds provision of the Clean Air Act, judicial review is allowed after the initial judicial review period has passed, and this allows for EPA to adequately respond to changed circumstances, such as those we have here. And EPA and interveners have argued that such challenges must be based solely on after-arising grounds. However, the Court should not interpret this term solely, so narrowly, as to frustrate the purpose of the after-arising grounds provision, which is, again, to ensure that EPA is adequately responding to changed circumstances. This Court, when presented with this issue in cases such as the ARCVA 1 case and the National Mining Association case, looked not only to, first, whether the issue could have been raised before the agency at the outset, but then looked to whether the legal landscape had changed. If the analysis were as simplistic as EPA and interveners would prefer, the Court could have simply pointed back to the answer to the first question, whether the issue could have been raised before the agency at the outset. Instead, this Court has stepped through the analysis to see whether the legal landscape had changed since that time. And in the Honeywell case, this Court found that the legal landscape had changed in the form of the ARCVA decision. And the petitioners in that case were essentially allowed to be heard in this court to attempt to undermine the prior decision of this court that changed the legal landscape, the ARCVA decision. So if we imagine for a moment that after the ARCVA decision, EPA had issued a statement indicating that it did not plan to fully comply with the ARCVA decision, and a petitioner came forward asking that this court support and enforce its prior decision, the ARCVA decision, and require EPA to comply with it. I would imagine that such a petitioner would be heard, and it would almost seem illogical that the petitioners in the Honeywell matter who essentially attempted to undermine the merits of the prior decision changing the legal landscape were heard, but that a petitioner attempting to support and enforce the prior case law of this court that changed the legal landscape would not be heard. And that is the posture in which North Carolina finds itself. North Carolina has complied with what it understood this court to have mandated about the Clean Air Act's requirements, and now finds itself in the uncomfortable position of finding that EPA does not plan to comply with this court's dictates. So North Carolina believes that this should fall under the After Rising Grounds basis for review. If there are no further questions, I will reserve the remainder of my time for rebuttal. May it please the Court. Amy Doaner representing EPA with me at Council table, Stephanie Hogan of the Office of General Counsel of EPA. Before the Court are two different cases. I want to highlight that as an initial matter. There's the 2013 petition for review that seeks to directly challenge the Clean Air Act regulation. There's also the 2014 petition which seeks review of EPA's denial of the administrative petition. Because those actions are different actions, the questions before the Court, the inquiry is slightly different. First, I'm going to address the 2013 petition. As the questions of the Court highlight, there's two fatal flaws in North Carolina's After Rising theory. The first is that there isn't, in fact, an After Rising claim here. And the second is that even if there was, it was not filed within 60 days. And this Court is quite clear that the Clean Air Act's 307B1 judicial review provision was structured in the structure of the After Rising claim provision to provide for finality and therefore included that 60-day limitation, which is unusual compared to other statutes. And North Carolina failed to do so, to file within that period of time. Also, more fundamentally, the NRDC decision does not provide a basis for an After Rising claim in this case. Neither the holding of that case nor the analysis of that case can be analogized to these provisions that are in this particular rule. In the NRDC case, the Court was reviewing the non-attainment provisions, and its analysis was specific to that. There were two key components of its analysis. The first was looking at the statutory definition of PM10 and saying that PM2.5 is part of that. That's not something that has ever changed. About that case, what effect did that have, that determination that PM2.5 should be included with PM10? What was the legal effect? That did not change the legal landscape regarding how PM10 is defined. The statutory definition remains the same. What did it change? That was simply a part of the Court's analysis in the NRDC decision. There were two components. What North Carolina would like to do is read the discretion-limiting portion of the NRDC decision into the statutory provision. In fact, that part of the Court's analysis was in its discussion of the Whitman decision because Whitman was analogous to the case in NRDC. In both cases, the specific non-attainment subpart provisions were under review, and the Supreme Court had said that Congress clearly intended that EPA should use those provisions to promulgate the non-attainment implementation regulation. That's not at issue here. The provision that North Carolina is attempting to latch onto is Clean Air Act Section 166F. The first sentence of that, the first five words of that, says the administrator is authorized. That is not discretion-limiting. That is simply a grant of authority for EPA that if it were going to choose to promulgate PM10 increments to replace the statutory ones, then it has that authorization. And that's clearly distinguishable from the type of analysis that the Court undertook in the NRDC decision. I also want to highlight that the- In your view, does the NRDC decision have any effect on the increment rule? Is there any need to revisit the increment rule? On the 2010 increment rule, no, it does not. The holding does not affect the increment rule. It has no implications for the statutory provisions at issue. The analysis is not analogous. The underlying rationale that North Carolina is trying to point to, which is that particular statutory definition, existed in the statute in 2007 when EPA promulgated or when EPA published the proposed rule that then subsequently became the 2010 increment rule. So this is not something- Essentially, NRDC did not break new ground in any way to create this legal argument that North Carolina wants to pursue here. As I understand it, they want to link PM10 with PM2.5 so that they both be- PM2.5. There's nothing in NRDC that would allow them to make that argument? There's no basis in- That when we think about PM2.5, we ought to be thinking about it in terms of PM10. It's not really that new. PM2.5 is not really that new, but it goes back to the baseline for PM10. So PM2.5 is a subset of PM10, and EPA addressed that in the 2010 increment rule and discussed how it would read the fact that PM2.5 is a subpart of PM10, and it did so in the context of these statutory provisions. That's exactly what the court did in the NRDC decision as well. The key difference is that the statutory provisions are quite different in the NRDC decision, which there was the term shall, there was a congressional intent that was clear from the history of the amendments in 1990 of the Clean Air Act. That does not exist here, and, in fact, it's the opposite. The history of the amendments in 1990 indicates that what Congress intended in the Section 166F provision was to allow EPA to have the authority to undertake the proposed increment rule that it had proposed in 1989 but had not taken action on to be clear that they would have the authority to substitute for the statutory increments. That's the entire breadth of that statutory provision. So EPA laid this all out in the rulemaking. The sites to those portions of the rule are in our brief. And the impact of the NRDC decision on this specific rule that North Carolina wants to challenge belatedly, essentially it is an attempt to bootstrap itself into a claim using the term PM10, but it doesn't apply to these provisions. The analysis falls through. I also want to highlight that the 2014 petition is a different analysis. The North Carolina filed an administrative petition with EPA, and EPA denied that. They denied the petition for reconsideration at the same time because North Carolina had included also a request for a rulemaking under the EPA. It also denied that. In North Carolina's opening brief, they only address the reconsideration petition. At page 31, it's quite clear that they're only seeking to challenge the reasoning in that portion. They cite only the portion of that. Page 31 of the opening brief, also on pages 5 and 15, where they reference their argument regarding the administrative brief, it's only in regards to the timeliness. So in regards to any challenge to EPA's denial of the APA petition, that has been waived. It was not raised by North Carolina in its opening brief. In regards to the challenge to the reconsideration petition, which is brought under the Clean Air Act, EPA's decision to deny it was reasonable. It laid forth multiple reasons. It went through both of the prongs in regards to timeliness. And it assessed first whether the objection could have been raised during the public comment period, and concluded that no, it could not. And it listed both the fact that the comments had been made on these exact issues, also that NRDC did not say anything new about PM 2.5 being a part of PM 10, and that the statutory definition was the same. They also addressed whether the objection arose after the public comment period and within the time for judicial review, and found that the NRDC decision, the holding was not applicable to this particular rule. Also that the analysis was not applicable, and noted again that the statutory definition had stayed the same, that there was no change in the structure of the statute, that they had not made this objection within the period for judicial review as required by the statute. Also that even if all of those flaws were not impediments, they also had not filed it within 60 days. And then addressed the fact that the Utah SIP comments and response did not reopen. Isn't that your cleanest argument, that it didn't file within 60 days, even if NRDC did provide some change, that it wasn't within 60 days, right? Certainly in regards to case number 13-19-12, yes. I think that is definitive. The court should dismiss for lack of timeliness. We say that it's a lack of subject matter jurisdiction. The court does not necessarily have to reach that issue and dismiss. The precedent of the circuit is quite clear, that 307-B-1's timeliness requirements are jurisdictional. That doesn't matter here, though. The court does not reach that. You know, I'm skeptical that that's appropriate terminology there. Jurisdiction, I don't think, is the right word. He doesn't like the word. All right. He thinks it's overused. I like the word, but I've been told by others that matter that it's overused. Indeed, I have heard that as well. I want to make sure I have your argument on the administrative petition. The EPA denied that in a letter. What were the grounds for EPA's denial? EPA laid for the reconsideration petition, which is separate from the EPA petition. Some of the grounds were overlapping in each one of those sections. Would you like me to go through each one of those grounds again? I understood that the grounds were failure to exhaust. Is that right? No. It was that the claim could have been made at the time. There are two potential timeliness provisions that are laid forth in 307D7B, which provides for a petition. You're talking about the 2014? Yes. Right. So the timing was grounds arising after? The provision in 307D7B for a petition for reconsideration is tied in the logic to the grounds arising after that's set forth in 307B1. But that's not in fact those two statutory provisions. I guess one could characterize it as failure to exhaust because you didn't raise this during the initial ruling. No. That is not EPA's rationale for denying the petition. In fact, these claims were raised and discussed. The problem is the opposite, is that North Carolina had the opportunity at the time of that rulemaking to participate. North Carolina is not in a changed position here. They're a state. They were clearly going to fall within the purview of this regulation, which provides for the implementation of a state implementation plan. And nothing has changed regarding their position. But three years down the road, they're coming in and they're saying, wait, we don't like what this rule says. Yes, there are other states that are implementing. There are permits being issued. But we think that we have a claim to be heard. Well, the Clean Air Act restrains the ability for parties to do that because there's an interest in finality. There's a reliance by many parties throughout the country, many states and other private parties on having finality in these Clean Air Act. It is possible to seek a review based on after arising grounds, but it's quite narrow. And the basis for the denial of a big picture and description of it is that North Carolina could have made all of these arguments back in 2007 commenting on the proposed rule. They also could have come in and they could have filed a petition for judicial review based on comments that had been submitted on the proposed rule and challenged the original rulemaking. They cannot come now, three years later, and either challenge the regulation that's on the books or... Did North Carolina in fact submit comments? No, it did not. None? None. If there are no further questions. Thank you very much. Good morning. Good morning. May it please the Court. Seth Johnson for Environmental Interveners. First, Judge Griffith, you asked if the cleanest path to getting rid of this case or deciding this case, sorry, would be to find that North Carolina was... I think what I was asking is their strongest argument. Well, I agree. That is the strongest argument that North Carolina filed more than 60 days after its after arising ground. We don't agree that NRDC is an after arising ground, but the Court doesn't even have to reach that question because that's the actual after arising ground that North Carolina is relying on here. It essentially concedes this, I think, at page 28 of its reply where it says it couldn't have raised its objection until NRDC came out. But because North Carolina took no action within 60 days of NRDC's release, it has to claim that its after arising grounds are EPA's failure to comply with NRDC. But that can't be a distinct after arising ground from NRDC itself. If the 2010 rule were illegal under NRDC... Was there a petition for rehearing in the NRDC case? No, there was not, nor were there any petitions for certiorari. But as I was saying, if the 2010 rule were illegal or unlawful... Well, why couldn't that... Why couldn't the after arising effect be NRDC plus EPA's inaction? I mean, your friend argues that the state had every right to think that EPA would act consistent with their meeting at NRDC. It turns out EPA didn't. Well, this court has repeatedly admonished petitioners that they should file protective petitions for review if they may have a ripe claim. And North Carolina didn't do that. And North Carolina's claim was ripe as soon as NRDC came out. EPA had already taken a final position at that point. And North Carolina thinks that it was harmed by that final position. Whether EPA might have changed that position or not, there was no way to know that. But if North Carolina thought that the 2010 rule was illegal, it should have filed for review within 60 days of that. EPA would have been failing to comply with NRDC as soon as NRDC came out. And North Carolina's argument opens the door to challenges well after. The real argument is that there was nothing about NRDC that made the EPA out of compliance with this rule, right? That's correct. And this argument that North Carolina filed too late, that also takes care of, that also addresses the administrative petition for reconsideration, as EPA explained at JA162. On the merits, I agree that the provisions at issue here are very different from the provisions at issue in NRDC. And then just on the jurisdiction question, we agree that that's unnecessary to this case. However, we think that EPA's position that the 60-day limitations period is jurisdictional is incorrect. But there are several reasons that the court doesn't have to reach that question. But if you did reach the question, we think you should find that it's not correct, even though I recognize there's a case law in this court saying that the period is jurisdictional, but those statements rely on cases that predate the Supreme Court's more recent statements about what makes a condition jurisdictional. And they no longer bind this court. And as we explained in our brief, under the Supreme Court's clear statement test, the limitations period is not jurisdictional. Congress made the limitations period speak only to the obligations of the petitioner, not to the power of the court. If there are no questions, I'll stop. Thank you very much. Judge Griffith, you asked what the NRDC decision had changed. And we heard from EPA's counsel that the definition of PM10 has been the same all along, which is true. However, the NRDC court added to that situation the holding that EPA has no discretion to ignore PM10-specific discretion-limiting provisions when promulgating PM2.5 implementation rules. So there may have been some question in EPA's mind, obviously, since it did ignore such a discretion-limiting provision here that applied to PM10. But here we now know that the NRDC court held that those provisions, which were also promulgated in 1990, like the subparts 2 through 4 that were addressed in the NRDC decision, because they conditioned EPA's authority, can't be ignored because that would ignore the overall structure of what was intended there. And EPA pointed to the language saying that it was authorized to, but did not need to, promulgate such increments. However, that is more a matter of the fact that they may not need to be updated. It isn't mandatory to update them, rather than that that language and the conditioned authority can be ignored. And the legislative history that EPA's counsel raised supports both interpretations. Congress said that EPA had no authority to do what it was trying to do in 1989, and gave EPA the authority in subsection F, but conditioned that authority. So again, we're back to the NRDC case, noting that EPA cannot ignore such limitations on its authority by using more general provisions. And briefly, just on the administrative petition issues, North Carolina believes that those raise the exact same issues as the direct judicial review petition case, that much of the same timeliness arguments are there, and that the merits are the same. One other thing that I wanted to mention, an argument that North Carolina could not have made in 2010, was that it was being forced to choose between EPA's interpretation of the Clean Air Act, and this court's interpretation of the Clean Air Act. And EPA, excuse me, North Carolina decided to follow this court's interpretation of the Clean Air Act. That is not a position that EPA was put in, in 2010. So EPA's position has changed. And finally, intervener's counsel mentioned that this court and other courts have cautioned parties to file claims even if they may be unripe. However, I would point the court to Coalition for Responsible Regulation 684F.3D102, in which the court said that, almost the opposite, that ripeness concerns can outweigh sometimes even repetitive litigation, and that the courts have assured parties that if they have unripe litigation, they will not be turned away later because they did file when it was ripe. So I think there are some counterindications to what intervener's counsel was pointing to. Thank you, Your Honor. Thank you very much. The case is submitted.
judges: Griffith, Kavanaugh, Randolph